**MASTER ABRASIVES CORPORATION,**
Appellant (Plaintiff below),

v.

**Dean WILLIAMS, Appellee**
**(Defendant below).**

No. 4–284A47.

Court of Appeals of Indiana,
Fourth District.

Oct. 23, 1984.

Ronald L. Baker, Indianapolis, for appellant.

Robert L. Bauman, Heide, Gambs and Mucker, Lafayette, for appellee.

CONOVER, Judge.

Appellant Master Abrasives Corp. (Master) filed suit against Gary Dean Williams (Williams) to collect on a promissory note given in partial payment for a distributorship of Master's products. Williams filed a counter-claim alleging violation of the Indiana Franchise Disclosure Law, IND. CODE 23–2–2.5. Following a bench trial, the Tippecanoe Circuit Court entered judgment in favor of Williams ordering cancellation of the promissory note, return of Williams's initial deposit of $1,000 plus interest, and awarding attorney's fees of $350. Master appeals this judgment.

ISSUES

Master's appeal presents two issues for review:

1. Did the contract between the parties meet the statutory definition of a "franchise" under IC 23–2–2.5–1?

2. Was the evidence sufficient to support the judgment against Master?

FACTS

On September 28, 1982, Master and Williams entered into a sale and distribution agreement whereby Williams paid Master $1,000 and executed a 90-day note in favor of Master for $2,000. Master was to grant Williams exclusive selling rights to its trademarked product for two territories containing a total of 22 counties, provide product education, and sales assistance. At the time of the agreement, Master Abrasives's product line included grinding wheels and grinding points, in various grits, used in metal fabrication applications.

Prior to signing the agreement, Robert F. Oldham (Oldham), controller, vice president, and national sales manager of Master represented to Williams there was a potential for earning $30,000 to $40,000 annually from a distributorship, and Master had distributors who were currently earning that amount.

During the first 90 days Williams had the distributorship, Master held at least one training session in the Indianapolis area, and conducted several field training sessions. The training in Indianapolis consisted of a four-hour session during which sales techniques, customer selection, quotation sheets and accounting methods were discussed. The field training consisted of William T. Johnson (Johnson), general man-

ager and owner of Master, accompanying Williams or his sales personnel on "cold calls" to area businesses. There was no product familiarization training, but Williams was supplied with pamphlets containing technical language on the use of the product.

All products to be sold under this agreement were manufactured by independent manufacturers to Master's specifications. The products so manufactured and the literature furnished Williams all bore Master's trademark or logo. Neither Williams nor his personnel sold any products in the 22 county territory while the agreement was in force, although Johnson accompanied Williams's personnel and made sales presentations to prospective customers.

On December 28, Master attempted to collect the promissory note. When Williams refused payment, Master filed suit to collect the note. Williams counter-claimed for return of his deposit and for attorney's fees.

## DISCUSSION AND DECISION

### I. Nature of Agreement

Master first contends the trial court erred by finding the agreement a franchise. Specifically, Master contends IC 23–2–2.5–1(a) sets forth three criteria for a franchise, each of which must be met before an agreement is classed as a franchise under the act. Its agreement did not meet two of the three requirements, Master opines.

We agree with Master's contention IC 23–2–2.5–1(a) requires all three criteria be met before a franchise is formed.[1] We disagree with Master's interpretation of the facts, however, and find the evidence sufficient to support each requirement for a franchise.

IC 23–2–2.5–1(a) provides:

(a) "Franchise" means a contract by which:

(1) a franchisee is granted the right to engage in the business of dispensing goods or services, under a marketing plan or system prescribed in substantial part by a franchisor;

(2) the operation of the franchisee's business pursuant to such a plan is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate; and

(3) the person granted the right to engage in this business is required to pay a franchise fee.

"Franchise" includes a contract whereby the franchisee is granted the right to sell franchises on behalf of the franchisor.

Master concedes subsection (3) is met by the $3,000 fee it assessed Williams, but denies there was evidence sufficient for a finding of a marketing plan as required by subsection (1) or for a finding the business would be substantially associated with Master's trademark as required by subsection (2).

When reviewing sufficiency of the evidence questions, we neither reweigh the evidence nor judge the credibility of witnesses. We consider the evidence most favorable to the judgment and all reasonable inferences to be drawn therefrom. *Martin v. Roberts*, (1984) Ind., 464 N.E.2d 896, 904; *Citizens Bank & Trust Co. of Washington v. Gibson*, (1984) Ind.App., 463 N.E.2d 276, 279; *First National Bank of New Castle v. Acra*, (1984) Ind.App., 462 N.E.2d 1345, 1348.

The evidence presented at trial established the agreement concerned only Williams's distribution of products or services covered by Master's trademark. The agreement itself was written only in terms of "Master Abrasives Products." Oldham, Master's controller and national sales manager, testified Master Abrasives Products, "... were private labeled Master Abrasives under our trademark ...." The evidence clearly supports a finding the business would be substantially associated with Master's trademark as required by subsection (2).

---

1. Williams apparently concedes this point.

Because there is no mention of a marketing plan in the agreement, the requirement of subsection (1) is not met, Master asserts. While the phrase "marketing plan or system" is not in the agreement, there is substantial evidence in the record from which the trial court could infer such a plan existed.

The agreement itself indicates the existence of a marketing plan or system. It divides the state into marketing areas, authorizes the establishment of sales quotas by Master, gives Master approval rights of any sales personnel who Williams sought to employ, and establishes mandatory sales training by Master for Williams's sales personnel. Johnson testified he attended several field sales training sessions where Williams and his personnel were trained in Master's sales methods by Master personnel. Also, Johnson testified he attended training sessions where Williams and his employees were given quotation sheets, invoices and other sales forms. Further, they were instructed as to what type of customers should be contacted, which customers to emphasize, and Master's policy on giving samples.

Finally, Williams's sales personnel were required to elicit information from customers as to the use each would make of Master's product. Master required this information be gathered and submitted to them so *they* could determine which product could be sold to the customer. Under this procedure, the sales personnel could not sell Master's products without first consulting Master. Both a salesman for Williams, and Johnson, Master's owner and general manager, so testified.

■ Taken as a whole, there was substantial evidence from which the trial court could reasonably infer the existence of a marketing plan or system. The trial court correctly found the agreement to be a franchise.

## II. Fraud Required for Recovery

■ Master next contends even if the agreement is a franchise, no fraud was found by the trial court. A showing of fraud, deceit, or misrepresentation is required for recovery under the Franchise Disclosure Law, it argues, citing *Moll v. South Central Solar Systems, Inc.*, (1981) Ind.App., 419 N.E.2d 154. We agree with Master's statement of the applicable law, but again disagree with its interpretation of the facts in this case.

Judge Ratliff, in *Moll*, clearly establishes the private civil remedy under this act arises only upon allegations of facts which would support an inference of fraud, deceit, or misrepresentation. *Id.*, 419 N.E.2d at 162.

The trial court made specific findings of fact, *sua sponte*, but made no mention of fraud, deceit, or misrepresentation.[2] This being so, Master argues, the court could not find fraud. This argument is without merit.

■ If findings of fact are not requested by a party or required by statute but are made *sua sponte* on some issues, issues not covered by the findings are controlled by the general judgment of the trial court. *Mishawaka Brass Mfg. v. Milwaukee Valve Co.*, (1983) Ind.App., 444 N.E.2d 855, 857; Ind. Rules of Procedure, Trial Rule 52(D)(2). If the decision of the trial court can be sustained upon any legal theory, we must do so. *Marshall County Redi-Mix v. Matthew*, (1984) Ind., 458 N.E.2d 219, 221; *Gorski v. Deering*, (1984) Ind.App., 465 N.E.2d 759, 761; *Orkin Ex-*

**2.** In its findings of fact, the trial court stated:

The matter having been submitted and heard, the Court being duly advised now finds that:

The subject note was executed by Defendant as partial payment for the purchase from Plaintiff of a franchise as defined by I.C. 23–2–2.5–1.

Plaintiff was not registered for, or exempt from registration for the sale of franchises as required by law.

Defendant is entitled to judgment on Plaintiff's complaint, and upon Count I of his counterclaim is entitled to rescind the Sales and Distribution Agreement, and to recover the sum of $1,000.00, plus interest, attorney fees of $350.00 and costs.

*terminating Co., Inc. v. Traina,* (1984) Ind.App., 461 N.E.2d 693, 704 (trans. pending).

Williams argues Oldham's statements concerning profit potential and ease of earning back the investment are sufficient to support a finding of fraud. We disagree. These statements are mere opinion. Williams had no right to rely thereon. The essential elements of actual fraud are a material representation of past or existing *facts*, which representations are false, made with a knowledge or reckless ignorance of this falsity, which causes a reliance upon these representations, to the detriment of the person so relying. *Whiteco. Properties, Inc. v. Theilbar,* (1984) Ind.App., 467 N.E.2d 433, 436; *Blaising v. Mills,* (1978) 176 Ind.App. 141, 145, 374 N.E.2d 1166, 1169.

While Oldham's statements as to the profit potential of the franchise are not sufficient for a finding of fraud, his statements about existing distributorships and their profitability will support such a finding. Testimony by Williams showed he relied on Oldham's representation Master had distributors earning $30,000 per year from the distributorships. Testimony by Johnson, however, shows there were only two distributors at the time, one of them being Oldham, and the *total sales* by these distributors during 1982 was only $10,000 to $15,000. Using Oldham's estimated cost of sales percentage of 40%, this shows earnings of only $6,000 to $9,000 for all the distributorships combined. Such a discrepancy is a clear misrepresentation by Oldham of an existing material fact.

A purchaser may rely on statements of fact made by the seller which are not obviously false and where the buyer lacks facilities for ascertaining the truth, as where facts are peculiarly within the knowledge of the seller. *Whiteco, supra,* 467 N.E.2d at 437; *Grissom v. Moran,* (1972) 154 Ind.App. 419, 429, 290 N.E.2d 119, 124. Here, the profitability of existing distributorships could have been known only by the principals of Master or the distributors themselves. Thus Williams reasonably could have relied upon such representations. That they were false statements renders them fraudulent. We find no error.

Affirmed.

MILLER, P.J., and YOUNG, J., concur.