**CAPTAIN & COMPANY, INC. and Darold Joe Bates, Appellants (Defendants Below),**

v.

**Daniel T. STENBERG, and Dorothy I. Stenberg, Appellees (Plaintiffs Below).**

No. 4–285A44.

Court of Appeals of Indiana, Fourth District.

March 18, 1987.
Rehearings Denied May 26, June 12, 1987.

**90**

James R. Byron, Thorne, Grodnik, & Ransel, Elkhart, Ralph R. Huff, Goodrich, Jones & Huff, Plymouth, for appellants.

Edward J. Chester, Chester & Paulson, Elkhart, James N. Clevenger, Kizer, Neu, Joyce, Wyland Humphrey, Wagner & Gifford, Plymouth, for appellees.

MILLER, Judge.

Appellants, home building contractors Darold Joe Bates and the Captain & Company, Inc. (the Company) entered a contract to rebuild the fire damaged home of Daniel and Dorothy Stenberg. When the Stenbergs refused to pay more than what they considered to be the agreed contract price, the Company ceased work on the house. The Stenbergs sued on the theories of breach of contract, fraud and violation of the Indiana Deceptive Consumer Sales Practices Act, and a jury, in a single general verdict, awarded them $65,000. The Company appeals, alleging there is insufficient evidence to prove it breached the contract, defrauded the Stenbergs, or violated the Act. It further alleges that, as a matter of law, it is not liable under any of these theories.

Additionally, it challenges the damage award on several grounds. It first argues the trial court incorrectly instructed the jury as to the proper measure of compensatory damages. It next claims the Stenbergs did not properly prove the amount of a reasonable attorney's fee. Finally, it argues there is no basis for a recovery for emotional distress.

We find the Stenbergs offered sufficient evidence for a jury to have found the Company liable under each of the three theories, and we find a basis in law for each of the three theories in this case. However, we do find the trial court erred in giving an erroneous jury instruction on compensatory damages. Accordingly, we affirm the verdict on the question of liability, but reverse the verdict on the issue of damages. We remand for a new trial limited to a determination of the proper amount of damages.

## FACTS

The facts most favorable to the judgment reveal that on May 4, 1982, a fire severely damaged the home of Daniel and Dorothy Stenberg. On the same day, the Stenbergs hired the Company to board up the structure, and, later, to salvage and store the personal property from their home.

Darold Joe Bates, the president of the Company, tried to persuade the Stenbergs to allow the Company to submit an estimate of the cost of reconstructing the house. The Stenbergs initially were reluctant to discuss reconstruction because they believed the house was a total loss. Instead of reconstructing the house, the Stenbergs intended to use the proceeds of their insurance policy to purchase another house. Bates counseled the Stenbergs that it would be unwise for them to buy a new home since they would suffer large financial losses due to supposed insurance penalties for failure to rebuild. This advice eventually led the Stenbergs to accept reconstruction estimates from the Company and Servicemaster, another fire reconstruction firm. The Company submitted an estimate in the amount of $68,135.99; on the basis of this estimate the parties entered into contract negotiations.

During the contract negotiations, the Stenbergs made it clear they did not want to spend more to repair the house than the amount they were to recover from their insurance company for its repair or replacement. The negotiations led to a contract which specified:

"I hereby agree to have the FIRE DAMAGE to property located at 27670 Willard Road repaired by CAPTAIN AND COMPANY, INC. *Contract price shall not exceed amount of insurance proceeds paid by Meridian Mutual Insurance Co., unless otherwise agreed in writing by the parties to this agreement.*

"Captain and Company shall prepare a detailed estimate of damages.

Captain and Company shall negotiate settlement with insurance company representative.

Captain and Company will prepare all necessary documents for Veterans Administration to release funds for repairs of damaged property.

Property owner shall be responsible to release proceeds for repairs and services rendered by Captain and Company, Inc.

"s/ Donald J. Bates

Representative of Captain and Company, Inc.

"s/ Daniel T. Stenberg
Property Owner
"s/ Dorothy I. Stenberg
Property Owner."
(emphasis added).

The Stenbergs insurance coverage for damage to the house and garage totalled $64,100; their coverage for damage to personal property totalled $29,000. The Stenbergs' insurance carrier, Meridian Mutual Insurance Company, eventually disbursed $64,100 to the Stenbergs for the reconstruction of the house.

The Stenbergs wanted some changes in the rebuilt house. Bates told them that it was possible to make the changes and stay within the amount of the original estimate by means of "put and take." By "put and take", Bates meant that the expense of the changes could be absorbed if the Stenbergs were willing to forego replacement of some of the original features of the house.[1]

The Company began reconstruction of the house, and shortly thereafter, Bates submitted additional estimates which stated the cost of rebuilding was going to be higher than the Company originally anticipated. When the Stenbergs did not agree to the cost increases, a good deal of tension arose between the parties resulting in a series of heated discussions; the Stenbergs were unable to understand the explanation of the price changes, but they thought that Bates wanted the contract price increased to $90,000. The confrontations with Bates adversely affected Dorothy Stenberg emotionally and physically. When the parties reached an impasse, Bates ordered the Company's personnel to quit the job site. At that time the reconstruction of the house was only 40% complete, and the Company had drawn $53,269.97 of the available funds.

In order to complete the project, the Stenbergs paid other contractors $28,000, resulting in a final cost of $81,519.60. Evidence indicated that before the fire the house had a value of $36,000. After the

expenditure of over $81,000, the market value increased to $39,500.

## DECISION

The Company raises several challenges to the judgment of the trial court. We shall first address those issues concerning the liability of the Company; we will then address the issues relating to the propriety of the court's damages award.

The Stenbergs brought this action against Bates and the Company on three grounds: breach of contract, fraud, and violation of the Indiana Deceptive Consumer Sales Practices Act. Bates and the Company allege it was error for the jury to find them liable under any of these theories of liability.

### I. *Breach of Contract Liability.*

The Company advances two arguments against liability under the theory of breach of contract. It first argues that there is no evidence it breached by failing to complete construction for the agreed contract price. It also argues there was no breach because the Stenbergs erroneously interpreted the contract and, on the basis of the erroneous interpretation, made improper demands entitling the company to abandon the project.

### A. *Sufficiency of the Evidence.*

The Company admits the question of whether a contract has been breached is ordinarily a question of fact, and is for the jury to decide. *Strong v. Commercial Carpet Co.* (1975), 163 Ind.App. 145, 322 N.E.2d 387, *reh. denied in part*, 163 Ind. App. 145, 324 N.E.2d 834; *Hanging Rock Iron Co. v. P.H. & F.M. Roots Co.* (7th Cir.1925), 10 F.2d 154. On appeal, we will not disturb the jury's decision unless the evidence is without conflict and can logically lead to but one conclusion, but the jury reached another conclusion. *Riverside Insurance Co. v. Pedigo* (1982), Ind.App., 430 N.E.2d 796; *Thompson Farms v. Corno Feed Products* (1977), 173 Ind.App. 682, 366 N.E.2d 3. The Company asserts the evidence is without dispute and clearly shows the Stenbergs wanted extra work

---

1. Witness Ron Davis provided one example of "put and take". The Stenbergs' home had had a utility room before the fire. They did not have

the utility room rebuilt; instead, they used the money saved to finance improvements in other areas of the house. Record, p. 855.

done, but refused to allow the Company to adjust the price to account for their additional work. Furthermore, the Company argues the evidence establishes that when it first indicated the contract could not be completed for the original price, the revised estimates were merely offers to do additional work, not invoices amounting to unilateral revisions of the contract. Finally, the Company argues the Stenbergs demanded the Company complete the contract for a price which was too low and, consequently, the Company was entitled to abandon the project.

When we review a jury verdict upon sufficiency grounds, we view the evidence in the light most favorable to the verdict, and we will make all reasonable inferences in favor of the verdict. *Martin v. Roberts* (1984), Ind., 464 N.E.2d 896. It is axiomatic that we will not, on appeal, reweigh the evidence.

■ Using this standard of review, we find sufficient evidence to support the verdict. The Stenbergs testified they were unwilling to spend more on the reconstruction than they were to recover from the insurance company for the damage to the house. There was also evidence introduced that, before the parties executed the contract, the Stenbergs informed the Company they were unwilling to exceed the structural damage insurance limit. Additionally, the evidence indicated Bates told the Stenbergs it was possible to make changes in the house *without raising the contract price* if they were willing to surrender some of the features the house originally possessed, a process described as "put and take". The Stenbergs did forego some of the original features of the house in order to compensate for changes.[2]

We find there was ample evidence from which the jury could have concluded the Company had breached the contract. When the Stenbergs refused to accede to the Company's demands for a higher contract price, the Company walked off the job

site. In doing so, the Company made it clear that it was not treating the price changes as proposals. Because the Company was not entitled to unilaterally change the agreed price, *Shanks v. Fisher* (1956), 126 Ind.App. 402, 130 N.E.2d 231, it breached by failing to complete performance as it had agreed. *See Johnson-Johnson, Inc. v. Farah* (1952), 123 Ind.App. 87, 108 N.E.2d 638.

It may be that the jury could have reached a different decision based on the available testimony, but we cannot say reasonable people could have reached the decision which this jury did. There was sufficient evidence upon which it could have found the Company breached the contract, and we cannot reverse on this issue.

### B. *Reasonableness of the Contract as a Matter of Law.*

The Company argues that, even if there were sufficient facts for a jury to find the Company raised the price of reconstruction beyond the amount of money the Stenbergs recovered from the insurance company for structural damage, there was no breach because the contract contemplated the maximum price for reconstruction to be the structural damage insurance recovery *and,* in addition, the $29,000 personal property insurance recovery. In its view, the clause, "contract price shall not exceed amount of insurance proceeds paid by Meridian Mutual Insurance Company, unless otherwise agreed in writing by the parties to this agreement," is ambiguous and must therefore be construed against the party who drafted it. *Oxford Development Corp. v. Rausauer Builders, Inc.* (1973), 158 Ind. App. 622, 304 N.E.2d 211. Since the Stenbergs' attorney drafted this term, the Company argues it must be construed against the Stenbergs.

The Stenbergs respond that, where a contract term is ambiguous, it is the jury's responsibility to decide what the parties intended the term to mean. *Piskorowski v. Shell Oil Co.* (1980), Ind.App., 403 N.E.2d

---

2. Throughout its brief, the Company makes much of the fact the Stenbergs wanted a particularly expensive brand of kitchen cabinets installed. However, the record indicates the Stenbergs contracted separately with another company for the cabinets and they were not included in the contract between the Stenbergs and the Company.

838. They note there is substantial evidence on the record tending to prove the parties intended this provision to limit the maximum contract price to the structural damage recovery and, consequently, the jury was justified in so interpreting the term.

█ We agree with the Stenbergs. In *Oxford Development,* the court noted, "Moreover, where a contract is ambiguous, the court will apply the construction which has been given it by the parties." *Oxford Development, supra,* 304 N.E.2d at 215. Here, the Stenbergs testified they told Bates they did not want to spend more than the structural damage proceeds to reconstruct the house. Bates testified that he did not believe the contract allowed the Company to charge the Stenbergs $93,300 —the total amount of insurance proceeds recoverable—to reconstruct the house. This evidence is sufficient for the jury to have concluded the parties intended the structural damage recovery to be the maximum contract price.

We are not sympathetic to the Company's contention that one of the rules of construction—that ambiguities be resolved against the party who introduced them into the contract—be applied here.[3] Here the Company did not tender an instruction on this point for the jury's consideration. Our supreme court has stated:

> "If a party desires a full and specific instruction as to what the issues are, it is incumbent on him to prepare such and present the same to the court at the proper time, with a proper request that it be given. If he fails to do so this he has no grounds to complain that the court did not state the issues to the jury."

*Pittsburgh, Cincinnati, Chicago & St. Louis Railway Co. v. Lightheiser* (1906), 168 Ind. 438, 459, 78 N.E. 1033, 1040. This rule was more recently restated by the First District of the Court of Appeals:

> "The law is well settled that if the court fails to cover some pertinent point then it is the *obligation of and duty of the party desiring to have that point covered in the instruction to tender his instruction on the same.* Failure to so tender the instruction waives the right to object to that point not being covered."

*Anderson v. Taylor* (1972), 154 Ind.App. 217, 222, 289 N.E.2d 781, 785 (emphasis added)

█ Our review of the record reveals nothing which indicates the Company tendered any instruction on ambiguity in this regard; nor did it tender an instruction on how the jury should resolve the alleged ambiguity. Since it offered no such instruction, and since it did not object to the instructions which were in fact given, the contract instructions given were the law of the case. *First National Bank of New Castle v. Acra* (1984), Ind.App., 462 N.E.2d 1345. The Company may not now seek application of a rule of law which it did not present to the jury. Accordingly, the jury did not err in construing the contract price provision favorably to the Stenbergs.

## II. *Liability Under the Indiana Deceptive Consumer Sales Act.*

█ The Stenbergs also alleged a cause of action under the Indiana Deceptive Consumer Sales Act, IND.CODE 24–5–0.5–1 *et seq.* This Act was enacted to prevent those who regularly engage in consumer sales from making false or misleading statements about their goods or services.

The Company argues it is not liable under this statute because there was insufficient evidence tending to prove it engaged in any of the conduct prohibited by the statute. Furthermore, it argues the Stenbergs failed to comply with the notice provisions of the statute and are therefore precluded from recovering. We find there was sufficient evidence to prove a violation of the Act, and we also find the Stenbergs complied with the notice requirements of the statute.

---

**3.** We would note rules of construction are merely tools to be used to determine the intention of the parties as expressed in the contract. Often the rules conflict, and we are not bound to give any one rule precedence over another.

### A. *Sufficiency of the Evidence.*

■ It is questionable whether the Company, in its brief, has adequately argued the question of whether the evidence was insufficient to find it violated the various subsections of the Act; its "argument" consists of quotations of the relevant subsections followed by variations of the bland statement "There is no evidence whatsoever tending to prove any violation of this subsection." This does not "contain the contentions of the appellant with respect to the issues presented, the reasons in support of the contentions along with citations to authority, statutes, and parts of the record relied upon, and a clear showing of how the issues and contentions in support thereof relate to the particular facts of the case under review," as required by Ind. Rules of Procedure, Appellate Rule 8.3(A)(7). Failure to comply with this rule constitutes waiver of this issue. *Martin Chevrolet Sales, Inc. v. Dover* (1986), Ind. App., 501 N.E.2d 1122; *Bank of New York v. Bright* (1986), Ind.App., 494 N.E.2d 970.

■ Even if the Company has not waived the sufficiency issue, we cannot reverse on the record before us. In order to recover under the Deceptive Consumer Sales Practices Act, the Stenbergs only needed to prove a single violation of the Act. We find the Stenbergs introduced sufficient evidence on one of their deceptive sales claims for a jury to have found a violation of the Act.

The relevant subsection reads:

"(Deceptive Act) (a) The following acts or representations as to the subject matter of a consumer transaction, made either orally or in writing by a supplier, are deceptive acts:

(1) that such subject of a consumer transaction has sponsorship, approval, *performance, characteristics,* accessories, uses or benefits it does not have which the supplier knows or should rea-

sonably know it does not have...." I.C. 24–5–0.5–3 (emphasis added).

This section is to be liberally construed to protect the consumer. I.C. 24–5–0.5–1.

Here, the Stenbergs introduced testimony that Bates told them it was economically feasible to reconstruct the house—the subject of the transaction—and that it could be reconstructed within the insurance policy limits. The Stenbergs also note the evidence showed that Bates had substantial experience as a contractor specializing in fire reconstruction. Finally, the Stenbergs introduced evidence that it cost $81,000 to rebuild a house valued at $36,000.

Given these facts, the jury reasonably could have found the reconstruction project was not economically feasible. Furthermore, the jury could have found Bates, the Company's agent, knew reconstruction was not feasible but convinced the Stenbergs that it was feasible in order to induce them to transact further business with the Company. This is sufficient to support a violation of the Act.

### B. *Adequacy of Notice.*

Bates and the Company also dispute their liability under the Act by claiming the Stenbergs did not adequately inform them of any violation of the Act. The Act requires the consumer to notify the supplier of the alleged deceptive act within (1) six months of the discovery of the deceptive act; (2) one year following the transaction; or (3) the time period of any warranty applicable to the transaction, whichever occurs first. I.C. 24–5–0.5–5. The notice must "state fully the alleged deceptive act and the actual damage suffered therefrom...." *Id.* The Company asserts the only violation of which it was notified was a violation of the "10% rule".[4] Since proof of violation of the "10% rule" was properly excluded at trial, it argues there was no notice given of the violations of the Act which they may have committed.

---

4. Under the 10% rule, it is a violation of the act for supplier to charge a customer anything over 10% of the original price estimate for the subject of a consumer transaction. I.C. 24–5–0.5–3(a)(12). This subsection did not become law until September 1, 1982, some three months after the transaction between the Stenbergs and the Company commenced. The trial court properly refused to allow the jury to consider this subsection as a basis for liability in this case.

■ The Stenbergs respond that their letter of October 6, 1982 is sufficient notice under the statute. In this letter they stated "it is at once apparent that your previous representations concerning ... your willingness to work within the insurance proceeds were false." Record, p. 1031. The letter made it clear the Stenbergs relied on Bates' expertise in agreeing to rebuild, and that they expected the Company to comply with the representations it made through Bates as to the feasibility of completing reconstruction within the amount of the insurance proceeds. It also notes the Stenbergs were damaged by at least $10,000. Finally, the letter gave the Company thirty days to remedy the deceptive practice by completing the project for the contract price.

■ We find this letter sufficient notice to satisfy the statute. The statute demands liberal construction; while the letter may not state the deceptive acts with absolute precision, it does give all the information required by the statute. We find no grounds for reversal here.

## III. *Liability for Fraud.*

### A. *Misstatement of Fact, or Promise of Future Actions?*

The Company maintains the jury could not properly have found for the Stenbergs on the fraud issue. The Company also asserts the only misrepresentations it made were promises to perform in the future, not statements of past or existing facts. Furthermore, it argues the Stenbergs had no right to rely on any of the statements made, since reliance on those statements would be unreasonable as a matter of law.

The Stenbergs identify Bates's assurance that the house was not totalled and that it was economically feasible to rebuild as misrepresentations of fact sufficient to sustain the cause of action for fraud. In addition, they argue that, because they were not familiar with the techniques of the construction trade, they were entitled to rely on the representations made by Bates on behalf of the Company.

■ In Indiana, fraud is defined as "a material misrepresentation of past or existing fact, which representation is false, and made with knowledge or reckless ignorance of the falsity, and which causes reliance upon such representations to the detriment of the person so relying." *Tutwiler v. Snodgrass* (1981), Ind.App., 428 N.E.2d 1291, 1295. Promises of future action cannot be the basis of an action in fraud. *Sachs v. Blewett* (1933), 206 Ind. 151, 185 N.E. 856; *Eby v. York-Division, Borg-Warner* (1983), Ind.App., 455 N.E.2d 623. Nor can opinions be the basis for an action for fraud. *Master Abrasives Corp. v. Williams* (1984), Ind.App., 469 N.E.2d 1196.

■ Some of the statements the Company made through Bates must be interpreted as promises of future performance, but there was evidence that Bates assured the Stenbergs that the house was not totalled and it was economically feasible for them to rebuild within the insurance proceeds limit. These representations persuaded the Stenbergs to rebuild. As we mentioned in our discussion of the Deceptive Sales Practices Act, there was also evidence on the record which showed the reconstruction of the house cost more than twice the market value of the house. Finally, there was evidence that Bates had substantial experience as a contractor and estimator. A jury could well have found these facts, and attendant inferences, demonstrated fraud. There was no error here.

### B. *Right of Reliance.*

■ In Indiana, one who relies on misrepresentations to his detriment may recover under the theory of fraud only if he had the right to rely on the misrepresentations. *Barnd v. Borst* (1982), Ind.App., 431 N.E.2d 161; *Plymale v. Upright* (1981), Ind.App., 419 N.E.2d 756. Whether or not one has the right to rely depends largely on the facts of the case. *See Barnd, supra.* Bates and the Company argue the Stenbergs had no right to rely because it would have been unreasonable for them to believe the house could be rebuilt—with changes from the original

plans—for the amount of the structural damage recovery.

■ This argument must fail. The Stenbergs sought some changes in the house, but they agreed to forego features the house originally possessed in order to offset the cost of any changes or improvements. In light of this arrangement, we feel the Stenbergs had the right to rely on the Company's representations. The Stenbergs were not experts in the building trade; they were entitled to believe the house was totalled, and that "put and take" would prevent the cost of construction from becoming prohibitive.

In a case involving fraudulent conduct on the part of a contractor, our supreme court recognized:

> "The building contractor occupies a position of trust, with members of the public for whom he agrees to do the desired construction. *Few people are knowledgeable about this industry,* and most are not aware of the techniques that must be employed to produce a sound structure. *Necessarily, they rely on the expertise of the builder."*

*F.D. Borkholder Co. v. Sandock* (1980), 274 Ind. 612, 413 N.E.2d 567, 571. (emphasis added).

We have held a purchaser may rely on statements of fact made by a seller when the statements are not obviously false and when the buyer lacks facilities for ascertaining the truth. *Master Abrasives, supra.* Here, we cannot expect the Stenbergs to be acquainted with all the *arcana* of the construction industry. The Company, through its president, informed them it was feasible to rebuild the house, and told them the process of "put and take" would absorb any cost increases. The Stenbergs had a right to rely on the statements of experts in the field, and we will not hold them to a duty which presumes they have some expertise in the construction field.

### C. *Tendered Instruction No. 33.*

■ The Company argues the trial court erred when it refused to give its tendered instruction number 33, which states, "Fraud cannot be based upon a promise by defendants to do something in the future even though at the time the promise is made the defendants have no intention of fulfilling the promise." Record, p. 335. This instruction is a correct statement of the law, but the trial court refused to give it, apparently because the court felt it to be redundant.

■ Normally it is error for a court to refuse to give an instruction if the substance of the instruction is correct, if it is supported by the evidence, if it does not repeat material adequately covered by other instructions, and if the substantial rights of the tendering party would be prejudiced by the failure to give the instruction. *Board of County Commissioners of the County of St. Joseph v. Arick* (1985), Ind. App., 477 N.E.2d 112. However, if the subject matter of an instruction is covered in another instruction, it is not error for the trial court to refuse to give it. *Thornton v. Pender* (1978), 268 Ind. 540, 377 N.E.2d 613; *Consolidated Rail Corp. v. Thomas* (1984), Ind.App., 463 N.E.2d 315.

■ The Stenbergs argue the subject matter of tendered instruction no. 33 was adequately covered by their tendered instruction no. 8, which was given by the trial court. This instruction states the Stenbergs had the burden of proving, "First, that the defendants made false statements representing them to be *statements of past or existing fact....*" Record, p. 1485 (emphasis added). Obviously, a statement of a past or existing fact cannot be a statement of promised acts in the future. Instruction no. 33 could be read to make the law in instruction No. 8 clearer, but no. 33 states no principle of law not adequately covered in no. 8. The trial court is not required to give the best possible instructions; it is only required to give instructions which adequately and correctly state the law. *Miller v. State* (1977), 266 Ind. 461, 364 N.E.2d 129. The trial court did not err in refusing the Company's instruction no. 33.

### IV. *Compensatory Damage Instructions.*

The Company alleges the trial court erred in giving paragraphs 3 and 4 of the

Stenberg's tendered instruction no. 21. This instruction, which purported to set forth the elements the jury could consider in determining the amount of compensatory damages under the contract, fraud, and Deceptive Sales Practices actions, reads:

"If you find for the plaintiffs on the question of liability, you must then determine the amount of money which will fairly compensate them.... you may consider:

1. The difference between the total cost of repair to the plaintiffs' residence less the final contract price between plaintiffs and defendants'

2. The difference between the fair market—fair value of work performed on plaintiffs' contents and the amount of money paid by plaintiffs for such work;

3. *The difference between the amount of insurance proceeds available to the plaintiffs and their actual expenditures in attempting to repair and restore their residence and contents;*

4. *The fair value of personal property the plaintiffs have been unable to replace by reason of exhaustion of their funds....*" Record, p. 368–369. (emphasis added).

The Company essentially claims that the Stenbergs were fully compensated for breach or fraud by being reimbursed for the cost of completing the house. It points out that paragraphs three and four, especially paragraph four, permit multiple damages by allowing the jury to add on the value of the personal property destroyed in the fire, up to the difference between the amount the Stenbergs expended to complete the structure and the maximum contract price, a sum of approximately $17,491.60.[5]

■■■ We find we must agree with the Company. A party is entitled to a jury instruction based on his theory of the case if its substance is within the issues formed by the pleadings and it is supported by the evidence. *State v. Edgman* (1983), Ind. App., 447 N.E.2d 1091. Of course, the instruction must also correctly state the law. *Arick, supra.*

■■■ In Indiana, the party who suffers from a breach of contract is entitled to recover the benefit of his bargain. *Indiana Tri-City Plaza Bowl v. Glueck's Estate* (1981), Ind.App., 422 N.E.2d 670. When a contractor breaches a contract such as this, the homeowner's benefit of bargain is the difference between the amount actually paid to complete or repair the structure and the contract price, *Johnson-Johnson, Inc. v. Farah* (1952), 123 Ind.App. 87, 108 N.E.2d 638; *Schaffner v. Preston Oil Co.* (1927), 94 Ind.App. 554, 154 N.E. 780, plus any other damages which were the natural, foreseeable, and proximate consequences of the breach, *Strong v. Commercial Carpet Co.* (1975), 163 Ind.App. 145, 322 N.E.2d 387, or which were specifically contemplated by the parties at the time they entered the contract.

■■■ The measure of compensatory damages for fraud is similar. The injured party is entitled to compensation for damage he suffered as a result of the fraudulent representation. *Automobile Underwriters, Inc. v. Rich* (1944), 222 Ind. 384, 53 N.E.2d 775. The damage must be the proximate consequence of the injured party's reliance on the fraudulent representations. See 37 C.J.S. *Fraud* § 141 and cases cited therein.

Under the Deceptive Sales Practices Act, the victim of a deceptive act is entitled to "damages he has actually suffered as a result of such act." I.C. 24–5–0.5–4(a). Obviously, the recovery must be limited to those damages which were the proximate result of the deceptive act.

■■■ In this case, the damage the Stenbergs suffered is the same under all three theories. The benefit of the bargain under the contract theory is the amount by which the final cost of reconstruction exceeded the structural damage insurance proceeds. The damage the Stenbergs incurred due to the fraudulent inducement to enter the con-

---

5. We derived this sum by subtracting the amount of the maximum structural insurance recovery, $64,100 from the amount the Stenbergs expended to complete the house, $81,591.60. The $17,491.60 was paid out, at least in part, from their contents damage proceeds.

tract is also equal to the difference between the cost of reconstruction and the insurance proceeds, since that difference is the sum which the Stenbergs had to pay from their own funds. The actual damages under the Deceptive Consumer Sales Act are also equal to the difference between final cost and insurance proceeds, again because that difference is the sum the Stenbergs had to pay out of their own funds. Under all three theories, Bates and the Company also would be liable for reasonably foreseeable consequential damages.

 The challenged instruction erroneously states the law because it allows the Stenbergs to recover the same damages twice. The instruction allows the Stenberg to recover the benefit of the bargain and, in addition, the amount of money they spent out of their own funds to replace personal property lost in the fire. The Stenbergs argue they are entitled to the money for the personal property as consequential damages because they would not have had to expend their own funds—up to $17,491.60 of the $29,000 personal property insurance proceeds—if the Company had not induced them to enter the contract or if the Company had not breached the contract.

The Stenbergs are mistaken. While it is true they expended personal funds to replace personal property because they had to divert some of their personal property proceeds to the reconstruction of the house, the award of the benefit of the bargain fully compensates them for their loss because it equals the amount diverted from the personal property insurance proceeds. As such, the damage award for the completion of the house would have reimbursed the Stenbergs for the out-of-pocket funds they expended. It is apparent the instruction renders the Company liable for damages which were not the result of its misconduct, and we must therefore reverse the award of damages to the extent it is based upon this instruction. Because we reverse the damage award, we address two additional issues which may arise on remand.

### B. *Attorney's Fees and Damages for Emotional Distress.*

The trial court instructed the jury they were able to award damages for attorney's fees and emotional distress. The Company challenges both items of damage.

With respect to attorney's fees, the Company asserts the damage award was improper for two reasons. The Company argues there is no basis in law for the award of attorney's fees on the legal theories pursued by the Stenbergs and it claimed the Stenbergs had not offered sufficient proof that the amount the Stenbergs claimed, $16,345, was a reasonable fee. We find no merit in the Company's contention.

 The Company challenges the legal basis for the fees because their conduct does not fall within the obdurate behavior exception to the general rule against awarding attorney fees in contract or fraud actions. We do not need to address this issue because we find a separate ground for the award of fees. The Stenbergs claimed fees under section 4 of the Deceptive Sales Practice Act. The relevant section reads:

> "A person relying upon an uncured or incurable deceptive act may bring an action for the damage he has actually suffered as a consumer as a result of such deceptive act. The court may award reasonable attorney fees to the party that prevails in an action under this subsection(b)." I.C. 24–5–0.5–4(b)

We have held the Stenbergs presented evidence establishing a violation of the Act; the Stenbergs, therefore, are entitled to attorney's fees under this section.

The Company argues the Stenbergs did not introduce proof sufficient to establish $16,345 as a reasonable attorney's fee. In support of this argument, the Company cites *Lystarczyk v. Smits* (1982), Ind.App., 435 N.E.2d 1011. In *Lystarczyk*, the court listed those factors which should be considered when determining the reasonableness of the attorney's fee:

> "(1) The time, labor, and skill required to perform the legal service properly,

(2) The difficulty of the issue involved,

(3) The fee customarily charged in the locality for similar legal services,

(4) The amount involved, and

(5) The time limitations imposed by the circumstances." 435 N.E.2d at 1017.

The Company alleges there was no proof introduced as to the legal skill required to handle the plaintiff's case, the difficulty of the issues involved, or the time limitations imposed by the circumstances.

■ We do not agree. The Stenbergs called Peter Rockaway, an attorney who practiced in Marshall County, to testify on attorney's fees. Mr. Rockaway testified as to the average attorney's fees in Marshall County, as well as to the high and low ranges for fees. Rockaway also testified as to what kinds of work were included in the determination of the fee. Finally, he testified that, in a case involving the kinds of issues involved in this case, $70.00 per hour would be a reasonable fee.

In *U.S. Aircraft Financing v. Jankovich* (1980), Ind.App., 407 N.E.2d 287, we reversed an award of attorney's fees because of insufficient evidence. In that case, the plaintiff merely presented evidence that his attorneys charged $30,000 for their services. There was no evidence as to the time spent on the case, or the skill necessary to address the issues in the case. In short, there was no justification for the award.

In *Lystarczyk*, the court was also faced with a failure of proof of fees. The plaintiff merely stated he had expended $2,005 in attorney's fees prior to trial. He introduced no evidence as to the time his attorney's expended, or the attorney fee for that kind of case.

Here, unlike *Jankovich and Lystarczyk*, the evidence given by local attorney Rockaway—plus evidence of the hours the Stenbergs' attorneys spent on the case—was sufficient to establish a monetary award for the legal services rendered.

With regard to emotional distress, the Company argues the jury's verdict was contrary to law insofar as it included damages for emotional distress or mental anguish. They note the Stenbergs introduced no evidence of physical injury; the Company states there can be no recovery for emotional distress in the absence of physical injury.

■ In Indiana, the general rule is damages for emotional distress may not be recovered in the absence of physical injury. *Little v. Williamson* (1982), Ind.App., 441 N.E.2d 974. However, where the offending party has acted fraudulently, physical injury is not required. *Acra, supra; Charlie Stuart Oldsmobile, Inc. v. Smith* (1976), 171 Ind.App. 315, 357 N.E.2d 247, *modified upon rehearing,* (1977), 175 Ind. App. 1, 369 N.E.2d 947, *trans. denied.*

■ Here, we have held the Stenbergs can recover under a fraud theory. They may therefore recover damages for emotional distress.

### CONCLUSION

We find sufficient evidence on the record to support findings in favor of the Stenbergs on grounds of breach of contract, fraud, and violation of the Indiana Deceptive Consumer Sales Practices Act. We also find the Stenbergs to be entitled to recover attorney's fees and damages for emotional distress. However, because the trial court improperly instructed the jury as to the proper measure of compensatory damages—and because the verdict was a general one rendering it impossible to determine what damages were included therein—we remand for a redetermination of the damage award, which may include damages for emotional distress and attorney fees.

Affirmed in part, reversed in part, and remanded for a new trial limited to the issue of damages.

YOUNG and ROBERTSON, JJ., concur.