**ENSERVCO, INC.; Western Environmental Resources, Inc.; Associated Environmental Systems, Inc.; and Don James, Appellants (Plaintiffs Below),**

v.

**INDIANA SECURITIES DIVISION, et al., Appellees (Defendants Below).**

No. 49S02–9310–CV–1195.

Supreme Court of Indiana.

Oct. 29, 1993.

Robert S. Walters, Barrett & McNagny, Fort Wayne, for appellants.

Pamela Carter, Atty. Gen., John T. Roy, Deputy Atty. Gen., Indianapolis, for appellees.

Lee Polson, Christine P. Files, King, Polson, & Associates, Inc., Austin, TX, Erick D. Ponader, Wooden, McLaughlin & Sterner, Indianapolis, for amicus curiae North American Securities Adm'rs Ass'n, Inc.

SHEPARD, Chief Justice.

The Indiana Securities Commissioner found that Enservco and others had violated this state's franchise disclosure laws and he entered various remedial orders. The respondents contend, among other things, that the Commissioner did not have proof of their scienter. We hold that scienter is not required.

### Procedural History

On August 14, 1989, the Securities Division of the Office of the Secretary of State filed an administrative complaint against respondents Enservco, Inc. ("Enservco"), Western Environmental Resources, Inc. ("Western"), Associated Environmental Systems, Inc. ("AES"), and Don James. The complaint alleged that respondents offered and sold a franchise in violation of the antifraud provision of the Indiana Franchise Disclosure Act, Ind.Code Ann. § 23–2-2.5-27 (West 1989).

The charges of franchise fraud stem from alleged misrepresentations and omissions in connection with the sale of rights to a proprietary system for testing underground tanks. On March 1, 1988, AES of Indiana, Inc. ("AES/Indiana") purchased the right to use the system in Indiana from

Enservco, a California corporation which owns the rights to the technology. The system utilizes computer-driven software and fluid testing and measuring equipment to test for leaks in underground storage tanks. AES/Indiana simultaneously purchased the necessary equipment and specially-equipped vans from Western, a California corporation which sells testing equipment and hardware for the system.

There was an evidentiary hearing on the administrative complaint, and on January 30, 1990, the Commissioner entered his Findings of Fact, Conclusions of Law, and Final Order. The Commissioner ruled that Enservco, Western, AES, and James [1] committed fraud during the negotiations leading to AES/Indiana's purchase of rights to the tank testing system. Specifically, the Commissioner concluded that respondents violated Ind.Code Ann. § 23–2-2.5-27 by (1) omitting to disclose to AES/Indiana the material fact that tests conducted by the Environmental Protection Agency in September 1987 indicated that the AES tank testing equipment did not meet EPA standards; (2) omitting to disclose to AES/Indiana the material fact that completion of tank testing in Indiana could take longer than the simulated testing AES/Indiana had observed at a site in California; and (3) revoking an option/right of first refusal to operate in the state of Ohio which respondents had agreed to grant to AES/Indiana. The Commissioner ordered respondents to cease and desist from violating Ind.Code Ann. § 23–2-2.5-27, and, pursuant to Ind. Code Ann. § 23–2-2.5-6, revoked all exemptions from franchise registration as to all respondents. The Commissioner ordered respondents to pay $1,075.00 in costs.

Enservco filed an appeal from this order in Marion Circuit Court pursuant to Ind. Code Ann. § 23–2-2.5-44 and § 23–2-1-20 (West 1989). Enservco moved for summary judgment, asking the court to reverse the Commissioner's order because it could

---

1. AES is a California corporation engaged in the business of using the Enservco-licensed software with the Western-supplied hardware. Don James is a shareholder, officer and director of Enservco, Western and AES. We will refer here to all four respondents as "Enservco." The Commissioner's final order applies to all respondents, and they have pursued this appeal together.

not be sustained as a matter of law on the findings of fact or the administrative record. Enservco moved in the alternative for a trial de novo pursuant to Ind.Code Ann. § 23-2-1-20(c).

The court denied Enservco's motion. It also declined Enservco's request for an evidentiary hearing de novo and instead based its decision on the administrative record and oral arguments.

The trial court held that the Commissioner's conclusions about Enservco's violations were sufficiently supported by evidence in the record. Accordingly, the court affirmed the Commissioner's order in all respects.

The Indiana Court of Appeals reversed the trial court's affirmance of the Commissioner's order and remanded with the instruction that the Commissioner set aside his order. *Enservco, Inc. v. Indiana Securities Division* (1992), Ind.App., 605 N.E.2d 256. It did, however, affirm the assessment of costs against Enservco. *Id.* at 270 n. 25. We grant transfer.

### Issues

The Commissioner presents two issues in his petition for transfer: (1) whether the trial court applied the correct standard of review to the Commissioner's order, and whether it erred in declining Enservco's request to introduce additional evidence to supplement the administrative record; and (2) whether the Commissioner's order is adequately supported by the evidence, in particular whether each of the elements of franchise fraud was established.

### I. Judicial Review in Franchise Cases

The Administrative Adjudication Act does not apply to orders of the securities Commissioner. Ind.Code Ann. § 23-2-1-24 and § 23-2-2.5-50 (West 1989). Instead, Ind.Code Ann. § 23-2-1-20 provides the standard for judicial review of orders of the Commissioner. *See also* Ind.Code Ann. § 23-2-2.5-44 (franchise chapter incorporates judicial review provision of general securities chapter). An appeal from an order of the Commissioner proceeds in a trial court as follows:

(c) [T]he commissioner shall ... make, certify, and deliver to the appellant the transcript [of the administrative proceedings], and the appellant shall ... file the same and a copy of the notice of appeal with the clerk of the court, which notice of appeal shall stand as appellant's complaint, and the commissioner may appear and file any motion or pleading and form the issue. *The cause shall be entered on the trial calendar for trial de novo* and given precedence over all matters pending in the court.

(d) *The court shall receive and consider any pertinent evidence, whether oral or documentary, concerning the order of the commissioner from which the appeal is taken.*

Ind.Code Ann. § 23-2-1-20(c), (d) (emphasis added).

Relying on Ind.Code Ann. § 23-2-1-20(c) and (d), Enservco asked the court to hold a trial de novo to review the Commissioner's order. Enservco argued it "would be impermissible" for the court to sustain the Commissioner on the basis of the existing record, because section 20(c) and (d) entitle Enservco to present additional oral and written evidence in a trial de novo. Enservco offered to introduce additional evidence, but did not specify the subject matter or relevance of such evidence.

At the commencement of the hearing, Judge Ryan stated that he believed a de novo evidentiary hearing was unnecessary "unless somebody comes up with something that's new and startling." (Record at 563). Enservco declined to seize this opportunity.

Enservco argues that the court erred in refusing to allow it to present additional evidence to supplement the administrative record. Enservco contends that a reviewing court should afford an order of the securities Commissioner less deference than is required when reviewing agency decisions pursuant to the Administrative Adjudication Act.

The Commissioner contends that the court properly applied a deferential standard of review. The statute's "trial de novo" provision does not contemplate full retrial of the issues, he says, but a more limited judicial review. The Commissioner further contends that the doctrine of distribution of powers and the general principles of administrative law limit the scope of a court's review to determining whether the administrative agency had jurisdiction over the matter decided, whether the administrative findings and order are supported by substantial evidence, whether the order was made according to proper legal procedure, and whether the order violates any constitutional, statutory or legal principle.

### A. What is the standard of review of an order of the Commissioner?

■ This Court has not yet spoken to the standard of review contemplated by Ind. Code Ann. § 23–2–1–20(c) and (d). We first consider here the proper standard, before moving to determine the propriety of the trial court's decision in this case.

To obtain judicial review of an order of the Commissioner, a party must, among other things, file with the trial court the transcript of the administrative proceedings and a copy of the notice of appeal. The notice of appeal stands as the complaint, and the cause is "entered on the trial calendar for trial de novo." Ind.Code Ann. § 23–2–1–20(c).

Although the term "trial de novo" is commonly understood to mean "a proceeding where a reviewing court decides facts anew, reweighs evidence, or substitutes its judgment for that of the fact-finder in the administrative proceeding," [2] the provisions of Ind.Code Ann. § 23–2–1–20(c) and (d) indicate that the legislature did not intend for the courts to apply the traditional standards of de novo review to orders of the

securities Commissioner. Subsection 20(d) prohibits retrying the facts or reweighing the evidence by limiting the additional evidence the reviewing court may consider to "any pertinent evidence ... *concerning the order* of the commissioner from which the appeal is taken." (Emphasis added). This language suggests a deferential review limited to consideration of the legal validity of the order of the Commissioner. It calls upon a court to admit only such evidence as necessary to aid it in determining whether the agency's order was made in conformity with proper legal procedure and within the agency's jurisdiction, whether the order is based upon substantial evidence, and whether the order violates constitutional, statutory, or legal principle. *See City of Evansville v. Nelson* (1964), 245 Ind. 430, 199 N.E.2d 703.[3]

■ In addition to the text of the statute itself, the doctrine of distribution of powers constrains a court's ability to retry the issues during judicial review of an agency's order. *Uhlir v. Ritz* (1970), 255 Ind. 342, 264 N.E.2d 312; *see also* Ind. Const. art. III, § 1 (no person charged with official duties under one of the three branches of government shall exercise any function of another branch). As part of the judicial branch, a court has no authority to usurp or exercise the functions of an administrative agency during judicial review of the agency's order. A court may not substitute its judgment on the merits of an issue for that of an administrative body acting within its jurisdiction. The purpose of judicial review of an administrative order is "solely to determine whether or not the body was outside the limits and jurisdiction of such body. Once the matter of jurisdiction is determined the court has no further right to interfere with an administrative procedure which belongs to another department of the government—not the judiciary." *Public Serv. Comm'n v. Chicago,*

---

**2.** *Stiller v. LaPorte Hosp., Inc.* (1991), Ind.App., 570 N.E.2d 99, 108.

**3.** When the legislature intends a wider-ranging review of agency decisions in other contexts, it provides for de novo review without limitation, *see, e.g.,* Ind.Code Ann. § 25–11–1–10 (West 1993); *see also* Ind.Code Ann. § 36–7–4–1336

(West Supp.1992), or it states explicitly that the reviewing court may hear *any* evidence relevant to the *issues* determined by the agency, Ind. Code Ann. § 13–2–15–2 (West 1990) (reviewing court "shall hear de novo all evidence relevant to the issues determined" by the agency).

*Indianapolis & Louisville Ry. Co.* (1956), 235 Ind. 394, 404, 134 N.E.2d 53, 54, *denying reh'g of* 235 Ind. 394, 132 N.E.2d 698.

■ This Court has long held that on de novo review of an administrative order, the complainant bears the burden of establishing the invalidity of the agency's action. *City of Evansville*, 245 Ind. at 443, 199 N.E.2d at 710. We will vacate an agency order only if the record, when viewed as a whole, demonstrates that the conclusions reached are clearly erroneous. *Cf. Stewart v. Fort Wayne Community Schools* (1990), Ind., 564 N.E.2d 274, *cert. denied,* —— U.S. ——, 112 S.Ct. 169, 116 L.Ed.2d 133 (1991) ("substantial evidence" standard applies when statutory scheme does not prescribe standard for judicial review of agency decision).

B. *Did the court err in declining to hold an evidentiary hearing?*

■ While the trial judge did not close the door completely on the presentation of evidence, his ruling could have been understood as a denial of Enservco's request. The Commissioner on appeal accepts the fact that it was. Because Enservco neither introduced evidence nor made an offer of proof, we are unable to determine what prejudice, if any, Enservco suffered by the court's denial. A party to an action by the Commissioner is not entitled to an evidentiary hearing as of right under Ind.Code Ann. § 23–2–1–20(d); a party may obtain a hearing only when it is necessary to assist the reviewing court in determining the legal validity of the Commissioner's order.[4] Nothing about Enservco's challenge to the order suggests to us that it would have presented evidence regarding the legal validity of the order as opposed to evidence merely retrying the issues. We hold that the trial court applied the proper standard

of review and appropriately declined the request for an evidentiary hearing.

## II. Is Scienter Required?

This case presents us with the novel task of determining the constituent elements of franchise fraud, i.e., a violation of Ind.Code Ann. § 23–2–2.5–27. We first tackle that issue, and we then consider whether the Commissioner's determination of fraud is supported by substantial evidence.

A. *What are the elements of franchise fraud?*

Enservco contends that Ind.Code Ann. § 23–2–2.5–27 incorporates the elements of common law fraud. It maintains that the following elements must be established to prove a violation of section 27: (1) a material (2) false representation of past or existing facts (3) made with knowledge or reckless ignorance of the falsity (i.e., scienter) (4) which causes reliance upon the representations (5) to the detriment of the person so relying. Enservco derives these elements from two cases of the Indiana Court of Appeals, *Master Abrasives Corp. v. Williams* (1984), Ind.App., 469 N.E.2d 1196, and *Moll v. South Central Solar Sys., Inc.* (1981), Ind.App., 419 N.E.2d 154, which held that a private cause of action for a violation of section 27 arises only upon a showing of facts giving rise to an inference of fraud, deceit or misrepresentation.

The Commissioner and amicus curiae, the North American Securities Administrators Association, Inc. (NASAA), reject the argument advanced by Enservco and embraced by the Court of Appeals, namely, that we should read a scienter requirement into section 27 because an identical federal provision, Rule 10b–5, 17 C.F.R. § 240.10b–5 (1992),[5] includes such a requirement. NA-

---

4. As we determined above, Ind.Code Ann. § 23–2–1–20(d) contemplates supplementing the administrative record with only such evidence as necessary to determine whether the order was within the agency's jurisdiction and in conformity with proper legal procedure, was based on substantial evidence, and did not violate any constitutional, statutory or legal principle.

5. Rule 10b–5 provides:
   It shall be unlawful for any person, directly or indirectly . . .
   (a) To employ any device, scheme, or artifice to defraud,
   (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements

SAA contends that § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q (1988),[6] more closely parallels Indiana's section 27 than does Rule 10b–5. Rule 10b–5 is modified by its enabling statute, § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j (1988),[7] which interjects a scienter element into the rule's operation. *Aaron v. Securities Exch. Comm'n.*, 446 U.S. 680, 689–95, 100 S.Ct. 1945, 1952–55, 64 L.Ed.2d 611 (1980).[8] NASAA urges us to construe Ind.Code Ann. § 23–2–2.5–27 like § 17(a). The U.S. Supreme Court has determined that neither § 17(a)(2), the parallel of our section 27(2), nor § 17(a)(3), the parallel of our section 27(3), contains a scienter requirement. *Aaron*, 446 U.S. at 697, 100 S.Ct. at 1956.[9]

▮ To determine the elements of franchise fraud we first approach the text of Ind.Code Ann. § 23–2–2.5–27 itself, and, if necessary, to the other statutory sections which compose the franchise regulation scheme. We look to persuasive federal court authority interpreting parallel securities provisions only to the extent we cannot discern the meaning of our statute from its text and apparent purpose.

Section 27 provides:

It is unlawful for any person in connection with the offer, sale or purchase of any franchise, or in any filing made with the commissioner, directly or indirectly: (1) to employ any device, scheme or artifice to defraud; (2) to make any untrue statements of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of circumstances under which they are made, not misleading; or (3) to engage in any act which operates or would operate as a fraud or deceit upon any person.

To establish a violation of section 27(2), one must prove the alleged violator, in connection with the offer, sale, or purchase of a franchise or in a filing with the Commissioner, made a false statement of material fact or omitted to state a material fact necessary in order to make statements made not misleading. Similarly, a violation of section 27(3) is established upon proof that the alleged violator engaged in an act which operates as a fraud or deceit upon any person. For purposes of the franchise chapter, "fraud" and "deceit" are defined as:

made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

**6.** Section 17(a) provides:

It shall be unlawful for any person in the offer or sale of any securities … directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

**7.** Section 10(b) provides:

It shall be unlawful for any person, directly or indirectly, …

….

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

**8.** In *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), and *Aaron*, 446 U.S. at 689–91, 100 S.Ct. at 1952–53, the Supreme Court held that § 10(b), and therefore Rule 10b–5, require proof of scienter. The Court reasoned that § 10(b)'s language—terms such as "manipulative," "device," and "contrivance"—"quite clearly evinced a congressional intent to proscribe only 'knowing or intentional misconduct.'" *Aaron*, 446 U.S. at 690, 100 S.Ct. at 1952.

**9.** The Court held that scienter is an element of a violation under § 17(a)(1). *Aaron*, 446 U.S. at 695–97, 100 S.Ct. at 1955–56. It reasoned that (a)(1)'s terms—"to employ any device, scheme, or artifice to defraud"—"plainly evinces an intent on the part of Congress to proscribe only knowing or intentional misconduct." *Id.* at 696, 100 S.Ct. at 1955.

any misrepresentation ... of a material fact, any promise or representation or prediction as to the future not made honestly or in good faith, or the failure or omission to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading.

Ind.Code Ann. § 23–2–2.5–1(f).

The core elements of section 27(2) and (3) franchise fraud are therefore a statement or omission, materiality, and falsity.

As to materiality, we agree with the U.S. Supreme Court's formulation of the concept. An item of information is material "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote," or, put another way, there is a substantial likelihood that a reasonable investor would have viewed the information as "having significantly altered the 'total mix'" of available information. *T.S.C. Indus. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976); *see also Arnold v. Dirrim* (1979), Ind.App., 398 N.E.2d 426, 433 ("The central consideration in determining materiality is whether a reasonable investor would attach importance to the information when deciding on his course of action.").

■ As in an action under federal Rule 10b–5,[10] to establish a violation of section 27, the Securities Division or a private plaintiff must also prove that the misrepresentation or omission caused some harm to the plaintiff (in a private action) or to the complaining party (in a division action).

Section 27 itself does not specify what level of culpability one must show, if any, in respect to the misrepresentation or omission to prove a violation. We consider as persuasive authority the U.S. Supreme Court's analysis of § 17(a). We agree with the Court's conclusion that scienter is contemplated by the language "to employ any device, scheme or artifice to defraud" which is shared by federal § 17(a)(1) and our section 27(1). Section 27(1)'s proscription is aimed at one who pursues a course of conduct with the knowledge or expectation that it will defraud another person. To prove section 27(1) franchise fraud, one must show the alleged violator employed a "device, scheme or artifice" with the knowledge or intent that it might defraud another.

For instances of franchise fraud falling into section 27(2) and (3), however, the legislature has used words whose common understanding does not convey a requirement of scienter, or indeed any measure of culpability at all.[11] Section 27(2) and (3) each prohibit conduct by referring to the nature of the conduct or to its effect, rather than by focusing on the mind of the violator. Subsection (2) proscribes material, untrue statements or omissions; subsection (3) prohibits any act which has the effect of operating as a fraud or deceit upon any person.

Other provisions of the Indiana franchise regulation scheme support our assessment that culpability is not an element of a violation under Ind.Code Ann. § 23–2–2.5–27(2) or (3). The absence of language in section 27(2) and (3) bearing on mental state suggests the legislature intended that these subsections should operate as strict liability provisions, especially because the legislature took care to specify required mental states in many other portions of the fran-

---

**10.** *See, e.g., Hatrock v. Edward D. Jones & Co.,* 750 F.2d 767 (9th Cir.1984) (Rule 10b–5 plaintiff must prove (1) transaction causation—that violations caused plaintiff to engage in the transaction; and (2) loss causation—that misrepresentations or omissions caused the harm); *accord Bennett v. United States Trust Co.,* 770 F.2d 308 (2d Cir.1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986).

**11.** Since the alleged franchise fraud in this case principally involves false statements and omissions, we focus our analysis on that variety of section 27(2) and (3) fraud. In regard to violations of section 27(2) and (3) by false prediction, promise or representation about the future, however, the legislature quite clearly intended to include fault as an element of proof. Such statements are actionable under section 27

chise regulation scheme.[12]

Moreover, in the definition of "fraud" and "deceit," quoted above, Ind.Code Ann. § 23–2–2.5–1(f), the legislature defined fraud by false statement or omission to cover certain conduct without regard to the speaker's culpability. In contrast, to define fraud by future promise or prediction, the legislature explicitly incorporated the mental state of "not made honestly or in good faith." *Id.*

The legislature also demonstrated its capacity to specify scienter requirement in its treatment of "fraud" in the general securities chapter, Ind.Code Ann. § 23–2–1–1(d) (West Supp.1992). Originally, the general securities chapter defined fraud as:

> any misrepresentation ... of a material fact, *which misrepresentation is intentional or due to gross negligence,* any promise or representation or prediction as to the future not made honestly or in good faith or the *intentional* failure to disclose a material fact necessary in order to make the statements made ... not misleading.[13]

On April 30, 1975, however, the same date the franchise regulation scheme was enacted, Pub.L. No. 262, 1975 Ind. Acts 1448, the legislature significantly amended the definition of "fraud" by false statement or omission in the general securities statute by deleting all reference to mental state. Pub.L. No. 261, § 1, 1975 Ind.Acts 1403 (deleting the underscored language in the passage quoted above). As a result, the definition of fraud in the general securities chapter is now virtually identical to that in the franchise chapter. *Compare* Ind.Code Ann. § 23–2–1–1(d) *with* Ind.Code Ann. § 23–2–2.5–1(f). The definition of "fraud" in the franchise regulation scheme on the date of its passage was essentially identical to this amended definition in the general securities laws. The legislature's decision

to strike from the definition of "fraud" in the securities chapter all reference to mental state (excepting its definition of fraud by promise or prediction) suggests a rejection of culpability as an element of franchise fraud.

Other sections of the franchise regulation scheme also support our conclusion that the legislature rejected culpability as an element of section 27(2) and (3) franchise fraud. For example, Ind.Code Ann. § 23–2–2.5–28, which permits consequential damages, judgment interest, and attorneys' fees for persons recovering for violations of the chapter, provides defendants an escape from attorneys' fee liability if the defendant proves a lack of negligence or knowledge with respect to the violation. Specifically, the statute allows recovery of fees "unless the defendant proves that the plaintiff knew the facts concerning the violation, or that the defendant exercised reasonable care and did not know, or if he had exercised reasonable care, would not have known, of the facts concerning the violation." *Id.*

The legislature's decision to provide defendants an escape from attorneys' fee liability on a showing of an absence of negligence demonstrates its understanding that liability for violations of section 27(2) and (3) would be imposed without any showing of fault. A contrary conclusion would render the attorneys' fee escape clause in section 28 superfluous and a nullity. *Cf. Arnold,* 398 N.E.2d at 433–34 (derivative liability section of Indiana Securities Act imposes absolute liability).

Our conclusion that fault is not an element of section 27(2) and (3) franchise fraud is also in harmony with the policies underlying the franchise chapter. Unlike most statutory schemes where the legislature's purpose must be derived from the

---

only if they were not made honestly or in good faith. Ind.Code Ann. § 23–2–2.5–1(f).

**12.** For example, in Ind.Code Ann. §§ 23–2–2.5–29 and –37 the legislature specifically included the mental state required under each section. Section 29 provides for joint and several liability for a person who aids and abets violations unless such person proves a lack of negligence

with respect to the violation. Section 37 provides for criminal liability for "knowing" violations of the chapter.

**13.** Act of Mar. 11, 1961, ch. 333, § 101(d), 1961 Ind.Acts 985 (emphasis added) (codified as amended at Ind.Code Ann. § 23–2–1–1(d)).

scheme itself, the legislature included an explicit statement of its purpose in regard to the franchise regulation scheme. *See* Ind.Code Ann. § 23–2–2.5–47. That statement directs that we liberally construe the franchise fraud statute to prohibit and prevent fraud, and to assure disclosure of sufficient and reliable information to afford investors reasonable opportunity to exercise independent judgment in franchise transactions. This statement indicates the legislature intended franchise fraud liability not as punishment for negligently or intentionally making false statements, but as a means to prohibit and prevent material, false statements and to assure that investors receive full and accurate disclosure regarding franchises. Omitting language about fault from section 27(2) and (3) indicates a legislative judgment that strict liability would most effectively achieve these purposes.

We hold that to prove a violation of Ind.Code Ann. § 23–2–2.5–27(2) or (3) by false statement or omission, one need not prove any degree of fault on the part of the alleged violator. The elements of section 27(2) and (3) are, in sum, a false statement or omission, materiality, and harm caused by reliance on the statement or omission. The holdings of *Moll*, 419 N.E.2d 154, and *Master Abrasives*, 469 N.E.2d 1196, are disapproved to the extent they require culpability as an element of proof under section 27(2) or (3).

**B. *Are the Commissioner's franchise fraud determinations supported by substantial evidence?***

On review of the Commissioner's final order, we affirm unless the findings of fact are clearly erroneous, or the Commissioner's determinations do not comport with the law applicable to the facts found. The Commissioner determined, and the trial court agreed, that the Securities Division proved that Enservco committed franchise fraud in respect to the EPA testing, time of testing, and option/right of first refusal issues. We find two of the Commissioner's three determinations clearly erroneous.

**1. *EPA testing***

■ On the EPA testing issue, the Commissioner made the following findings of fact:

10. Prior to entering into the licensing agreement, AES represented to AES of Indiana that the tank testing equipment was of the highest quality and met the provisions of National Fire Protection Act 329.

11. The officers of AES made no disclosure to AES of Indiana of an evaluation of the tank testing system done by the EPA at Edison, New Jersey in September of 1987, the results of which were made known to AES in December of 1987, which called into question the quality of the AES testing system.

(Record at 352–53).

These findings of fact are supported by the record. It shows that during negotiations leading to AES/Indiana's purchase of a franchise, Enservco made representations about the high quality of its tank testing system. Enservco also told AES/Indiana that its system complied with NFPA 329, meaning that it could detect tank leaks of .05 gallons per hour.

Enservco does not dispute that it did not disclose to AES/Indiana prior to the franchise sale in March 1988 the results of EPA tests which Enservco obtained in December 1987. In 1987, EPA evaluated tank testing systems in anticipation of promulgating rules governing such systems. The EPA had no rules or standards governing tank testing performance at the time it tested Enservco's system. EPA's evaluation of Enservco's system was generally unfavorable. The results indicated that the smallest leak Enservco's system could discern with a 95% probability of detection was 1.79 gallons per hour.

The Commissioner determined that Enservco's failure to disclose the EPA test results constituted a violation of Ind.Code Ann. § 23–2–2.5–27. The Commissioner concluded: "Respondents omitted to disclose to AES of Indiana the material fact that the tests conducted by the Environ-

mental Protection Agency in September, 1987 indicated that the AES tank testing equipment did not meet EPA standards." (Record at 353).

We conclude that this determination of franchise fraud on the EPA test issue is supported by law. The record contains proof of each of the elements of franchise fraud.

First, Enservco's failure to disclose the EPA test results constituted an omission which is actionable under Ind.Code Ann. § 23–2–2.5–27(2). When Enservco undertook to inform AES/Indiana of the quality of its tank testing system and that its system met NFPA 329, Enservco assumed a duty to disclose the whole truth without concealing material facts. *See, e.g., Thompson v. Best* (1985), Ind.App., 478 N.E.2d 79. The information that Enservco's system was found by the EPA to meet a 1.79 gallon standard (rather than the more sensitive .05 gallon standard) was a fact "necessary in order to make the statements made, in the light of the circumstances under which they [were made], not misleading." Ind.Code Ann. § 23–2–2.5–27(2). Without such information, Enservco's prior statements about the quality of its system's performance were misleading.

Second, the facts which Enservco failed to disclose are "material." The performance capacity of the tank testing system is a piece of information which a reasonable investor would certainly consider crucial to an investment decision. A reasonable investor would likely have viewed the EPA test results as "having significantly altered the 'total mix'" of available information. *See T.S.C. Indus.,* 426 U.S. at 449, 96 S.Ct. at 2132.

Finally, there is evidence that AES/Indiana was damaged. AES/Indiana officials testified that the publicity about the EPA test results on the AES system lead to lost clients.

### 2. *Time of testing*

■ On the issue of testing time, the Commissioner made the following findings of fact:

6. Prior to executing the licensing agreement, officers of AES of Indiana observed a simulation of the tank testing equipment at a site in California. This simulation led such officers to believe that the actual time to complete tank testing with the original tank testing equipment was between 2–3 hours.

7. The officers of AES of Indiana were not made aware, prior to executing the licensing agreement, that different weather conditions in the State of Indiana or the Midwest could increase the time it takes to complete tank testing with the original equipment.

(Record at 352).

Based on such findings, the Commissioner concluded that these omissions by Enservco's constituted a violation of Ind.Code Ann. § 23–2–2.5–27. He entered the following conclusion of law:

Respondents omitted to disclose to AES of Indiana the material fact that it might take the tank testing equipment a much longer period of time to complete a test in the climate as it exists in the State of Indiana, and that temperature changes could substantially increase the tank testing time period.

(Record at 353).

Although the Commissioner's findings of fact are supported by the record, we conclude these facts do not support his legal determination that Enservco violated section 27 by omitting to disclose Indiana testing times. AES/Indiana drew the inference that it would take two to three hours to operate the testing system in Indiana after it observed the simulated testing operation. There is no indication that Enservco made any oral or written representations regarding the time of testing, or that it even was aware of AES/Indiana's assumption regarding testing times. Enservco therefore assumed no duty to correct AES/Indiana's misimpression by informing it of potential Indiana testing times.

### 3. *Option/Right of first refusal*

 The Commissioner made the following findings of fact on this issue:

8. Contemporaneous with the execution of the licensing agreement, DON JAMES and Brent Balkema of AES of Indiana had discussions in which AES of Indiana was promised either the first right of refusal or an option to acquire franchises in Michigan, Ohio, Illinois and Kentucky....

9. During the period of the right of first refusal/option, AES revoked the option/right of first refusal given to AES of Indiana for the State of Ohio, and AES elected to directly operate in such state.

(Record at 352).

The Commissioner determined that Enservco's revocation of the option/right of first refusal constituted a violation of section 27. He concluded:

Respondents agreed to grant AES of Indiana an option/right of first refusal to the State of Ohio, which was a material fact in the decision of AES of Indiana to enter the licensing agreement. The subsequent revocation of this option/right of first refusal with respect to the State of Ohio operated as a fraud upon AES of Indiana.

(Record at 353).

Even if we accept the findings as correct, the Commissioner's determination that Enservco's revocation violated section 27 is not supported by law. Enservco's alleged promises of an option or right of first refusal for the rights to other states are promises to perform acts in the future, i.e., to sell AES/Indiana such rights on proper demand. To constitute "fraud" under section 27(3), therefore, the securities division was required to prove that such promises were "not made honestly or in good faith." Ind.Code Ann. § 23–2–2.5–1(f).

The Commissioner made no finding, and the record contains no suggestion, that Enservco acted without honesty or good faith when it promised AES/Indiana options or rights of first refusal for franchises in other states. The division therefore failed to sustain its burden of proof, and Enservco's revocation of the option/right of first refusal was not a violation of Ind.Code Ann. § 23–2–2.5–27.

### Mandate

The Commissioner properly found a securities violation with respect to non-disclosure of the EPA testing results. The Commissioner entered a general order to cease and desist. To prevail on judicial review, of such a general order, Enservco necessarily had to justify our setting aside all of the individual violations. Because it did not, we affirm the judgment of the trial court.

DeBRULER, GIVAN and KRAHULIK, JJ., concur.

DICKSON, J., concurs in result, dissents as to issue B(2) but otherwise concurs.